(92 Misc. Rep. 263)

### HATCHER v. WASSERMAN.

(Supreme Court, Trial Term, Montgomery County. November, 1915.)

1. EASEMENTS ⬅52—RIGHTS OF WAY—MODE OF USE—OBSTRUCTION.
Where plaintiff purchased land from defendant, the deed for which included a right of way over defendant's land for hauling wood and coal, while defendant may use the way, he cannot use it for any purpose or in any way inconsistent with plaintiff's right, or so as to render plaintiff's use unreasonably or unusually difficult.

[Ed. Note.—For other cases, see Easements, Cent. Dig. §§ 113–116; Dec. Dig. ⬅52.]

2. EASEMENTS ⬅58—RIGHTS OF WAY—NONUSER.
Although the owner of a right of way on defendant's land has practically abandoned the way, using it very infrequently, that is no defense to his action for obstructing the way granted by his deed.

[Ed. Note.—For other cases, see Easements, Cent. Dig. §§ 121–127; Dec. Dig. ⬅58.]

3. EASEMENTS ⬅58—RIGHTS OF WAY—OBSTRUCTION.
Although defendant, who granted right of way to plaintiff, can prevent its use for purposes other than those named in the grant, locked gates across it are an unreasonable burden upon plaintiff's use.

[Ed. Note.—For other cases, see Easements, Cent. Dig. §§ 121–127; Dec. Dig. ⬅58.]

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. EASEMENTS ⬤⟹58—RIGHTS OF WAY—OBSTRUCTION.

Where defendant granted right of way to plaintiff, and thereafter placed locked gates across it, plaintiff cannot be compelled to go to defendant's house for a key, or even to carry a key, in order to use the way.

[Ed. Note.—For other cases, see Easements, Cent. Dig. §§ 121–127; Dec. Dig. ⬤⟹58.]

5. EASEMENTS ⬤⟹51—RIGHTS OF WAY—EXTENT OF RIGHT.

A right of way by grant can be used for no other purpose than that named in the grant, and cannot be extended or limited by the nature of the user, unless its terms are ambiguous, when the circumstances can be considered to discover the meaning of the terms.

[Ed. Note.—For other cases, see Easements, Cent. Dig. §§ 109–112; Dec. Dig. ⬤⟹51.]

6. EASEMENTS ⬤⟹52—RIGHTS OF WAY—EXTENT OF RIGHT.

A grant of a right of way, "to be used as located by said first party for the purpose of drawing in wood and coal and to be used in common by parties hereto," is not an exclusive grant to haul in coal and wood, but must be construed to create a way with a right in common to its use.

[Ed. Note.—For other cases, see Easements, Cent. Dig. §§ 113–116; Dec. Dig. ⬤⟹52.]

Action by John C. Hatcher against Julius Wasserman. Judgment for plaintiff.

Homer J. Borst, of Schenectady, and Andrew J. Nellis, of Albany, for plaintiff.

Charles S. Nisbet, of Amsterdam, for defendant.

WHITMYER, J. On April 13, 1881, defendant owned a lot of land, 60 feet, front and rear, and 150 feet deep, upon which he then resided and now resides, on the northerly side of Grove street, in the city of Amsterdam, N. Y. At that time he also owned a lot, 30 feet, front and rear, and 100 feet deep, easterly of and adjoining the former, upon which there was then no building, and a lot in the rear of that, 50 feet northerly and southerly, and 90 feet easterly and westerly, upon which was a greenhouse. On that day he conveyed the easterly lot and the greenhouse lot to plaintiff, a florist, with a right of way over his adjoining westerly lot, which, by the language of the deed, was "to be used as located by said first party for the purpose of drawing in wood and coal and to be used in common by parties hereto." Thereupon defendant located a way, 12 feet wide, along the westerly side of his lot and around to a gate, 12 feet wide, opening into the greenhouse lot. Plaintiff, at some time thereafter, built a house on his lot, which covered the lot, with the exception of about 4 feet along the westerly side. When the way over defendant's lot was located, plaintiff commenced to use it, and he used it, until the greenhouses were removed, about five years thereafter, for drawing in material for an addition to the greenhouses, heating apparatus, wood, coal, fertilizer, plants, shrubs, and seeds, and for taking out plants and flowers. Since that time plants, flowers, and vegetables have been grown on the lot, by plaintiff's son or by plaintiff's tenants, who used the way to some extent, but not frequently. On August 12, 1912, plaintiff caused a load of wood to be drawn to the entrance; but he

could not drive in, because the iron gates, which had been built across the way, in connection with an iron fence, were locked, and he had no key. Thereupon, he commenced this action to restrain defendant from obstructing the way and to obtain an adjudication as to his rights.

[1] The deed gave plaintiff a right of way, to be used for the purpose of drawing in wood and coal and to be used in common by the parties. Under it plaintiff has a right of way for the purposes stated, and is entitled to the reasonable use and enjoyment thereof, and defendant may use the way for such purposes as he pleases, consistent with plaintiff's right, but cannot render the exercise of it by plaintiff unreasonably or unusually difficult or burdensome. Bakeman v. Talbot, 31 N. Y. 370, 88 Am. Dec. 275; Herman v. Roberts, 119 N. Y. 43, 23 N. E. 442, 7 L. R. A. 226, 16 Am. St. Rep. 800; Blydenburgh v. Ely, 161 App. Div. 91, 146 N. Y. Supp. 259. At first a wooden fence extended along the front of defendant's lot. It was removed some years before the commencement of the action. Until that time, a brick incline connected the roadway with the sidewalk at the entrance. That was the only one in front of the lot. Later an iron fence was built in place of the wooden one. Plaintiff fixed the time in the year 1911; defendant, in 1908. The brick incline was there until that was built. Then a curb was put in, and a wooden bridge, suspended from the curb, was used. Plaintiff said that the bridge was there about three months, and was then removed to the easterly part of the defendant's lot, in front of a garage, which seems to have been built there. Swinging iron gates were built, in connection with the iron fence, across the entrance to the way. At first these were not locked, but were opened and closed by means of a latch. At that time a lock hung from them, but was not locked. Later the gates were securely locked by a padlock, and kept so. Plaintiff did not discover this until July or August, 1912; but the testimony of defendant and of his daughter tends to show that the locking commenced about 18 months before that. They say that it commenced on an occasion when a load of rubbish and garbage was being taken from the rear, and that the daughter locked them at that time under instructions from her father. They have been kept locked ever since that time, and defendant has kept the key in his house. He said that he told plaintiff's son where it was kept, and that he would only have to ring the bell and ask for it, if he wanted it at any time. The son denied this, and testified that defendant said, "You can have a key," and that he replied that they could not and would not accept one, because that would be going in by consent, when it was their right. A key was not furnished or tendered.

[2-4] Defendant claimed that trespassers, who used the way on foot, made his action necessary. But a cemetery watchman was the only person whom he could name. Defendant also claimed that plaintiff has not been seriously injured, because he has practically abandoned the use of his right. While it is true that its use by him has not been as frequent since the greenhouses were removed as it was before, yet he has used it, and he has not lost or given it up. Defendant could and can prevent its use for purposes other than those stated

in the deed, but locked gates are not necessary to accomplish that, and constitute an unreasonable burden. In any event, plaintiff cannot be required to go into defendant's residence to get a key, or to carry a key, whenever he may desire to use his right. Blydenburgh v. Ely, supra. The damages are nominal.

[5] In his complaint plaintiff asks for an adjudication that he is entitled, by his deed, to the free and uninterrupted use of the way, in common with the defendant, to take wood and coal to his premises. On the trial he claimed that he has the exclusive right to draw wood and coal over it, and a right, in common with defendant, for all other purposes. There is no claim of right by adverse user. A right of way is limited in its use by the terms of the grant, from which the right is derived. If the grant is for a particular purpose, the way cannot be used for another purpose. Willard on Real Estate, page 195; Gerard on Titles to Real Estate, page 834; 2 Washburn on Real Property, page 350; 14 Cyc. pages 1206, 1207; Wells v. Tolman, 156 N. Y. 636, 51 N. E. 271. And the extent of the right is to be determined, not by user, but by the terms of the grant, except when those are ambiguous, in which case the surrounding circumstances are to be considered, in connection with the terms, for the purpose of determining the intention of the parties. Smith & Sons Carpet Co., v. Ball, 143 App. Div. 83, 127 N. Y. Supp. 974. On the other hand, the owner of property over which a right of way is granted may use it in any way consistent with the enjoyment of the right. 14 Cyc. page 1208; Tyler v. Cooper, 47 Hun, 94.

[6] The grant here is one of a right of way to be used for drawing in wood and coal and to be used in common by the parties. It is not a grant of a way to be used in common by the parties, since particular purposes are stated; and it is not an exclusive grant for those purposes, since there are no words of exclusion. It gives plaintiff a right to draw in wood and coal, and then provides as to the use of the way in common. This provision, although preceded by the conjunction, is not an addition to the grant, but rather a limitation upon it, or explanatory of it, indicating that plaintiff was not to have an exclusive right to draw in wood and coal, but that the parties were to have that right in common. And there is no limitation upon defendant, except that his right to draw in wood and coal is equal to that of plaintiff. In other respects, he may use the way in any manner, not inconsistent with plaintiff's right. The language is clear and unambiguous.

Findings accordingly, with the further direction that plaintiff have costs, to be taxed as in an action at law.